```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| B&M AUTO SALVAGE AND TOWING, LLC, d/b/a E-Z JOE'S USED AUTO PARTS, LLC, and ROBERT AND MICHELE HOFFMAN,<br><br>            Plaintiffs,<br><br>      v.<br><br>TOWNSHIP OF FAIRFIELD, RICHARD DE VILLASANTA, and GENEVA GRIFFIN,<br><br>            Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 11-2107<br>        (JEI/KMW)<br><br>**OPINION** |

**APPEARANCES:**

ZEFF LAW FIRM, LLC
Greg L. Zeff, Esq.
Drake P. Bearden, Jr., Esq.
100 Century Parkway
Suite 305
Mount Laurel, NJ 08054
    Counsel for Plaintiffs

RICHARDSON & GALELLA
Allan E. Richardson, Esq.
Chalres B. Austermuhl, Esq.
142 Emerson Street
Suite B
Woodbury, NJ 08096
    Counsel for Defendants Township of Fairfield and Richard
    DeVillasanta

BARKER, SCOTT & GELFAND PC
Vanessa E. James, Esq.
Linwood Greene – Suite 12
210 New Road
Linwood, NJ 08221
    Counsel for Defendant Geneva Griffin

1

**IRENAS,** Senior District Judge:

This case stems from a township's delay in issuing a local junkyard license and the applicants' subsequent failure to sell their junkyard.  Plaintiffs Robert Hoffman, Michele Hoffman, and the business they own, B&M Auto Salvage and Towing, LLC ("B&M"), claim that the Township of Fairfield and two of its employees, Richard DeVillasanta and Geneva Griffin, violated the Hoffmans' rights under the Fourteenth Amendment and tortiously interfered with their contract to sell B&M.  Plaintiffs contend that the Township's failure to timely issue the license prevented them from closing on the sale.  Presently before the Court are Defendants' motions for summary judgment.[1]  For the reasons given below, the motions will be granted. [2]

---

[1] Defendants Fairfield and DeVillasanta filed a joint motion for summary judgment (Dkt. No. 36) while Defendant Griffin filed a motion for summary judgment of her own (Dkt. No. 37).

[2] The Court has original jurisdiction over Plaintiffs' constitutional claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a).  Although the Court "dismisse[s] all claims over which it has original jurisdiction," it does not "decline to exercise supplemental jurisdiction over" Plaintiffs' state law claims. 28 U.S.C. § 1367(c).  Because the parties have already concluded discovery, the Court finds a final determination of all of Plaintiffs' claims is warranted.  See Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [§1367(a)] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); Osborn v. Haley, 549 U.S. 225, 245 (2007) ("Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction.")

I.

Plaintiffs Robert and Michelle Hoffman own B&M and the property on which B&M operates, 311 Ramah Road, Fairfield Township. (Def. Griffin's Statement of Facts ("GSF") ¶ 8, 32.) B&M does business as E-Z Joe's Garage. (GSF ¶ 1.)

Defendant Fairfield Township is a municipality located in Cumberland County and organized under the laws of the State of New Jersey. (GSF ¶ 3.) Defendant Richard DeVillasanta was the municipal clerk and business administrator of Fairfield (GSF ¶ 4); Defendant Geneva Griffin served as deputy clerk (id. ¶ 5).

The Hoffmans purchased 311 Ramah Road in December of 2007. (GSF ¶ 32.) On the property stood a motor vehicle junkyard. (Id. ¶ 17.) Fairfield Township Ordinance No. 18-01 requires the operator of a junkyard to obtain annually an operation license from the Fairfield Township Committee.[3] Griffin is in charge of "mak[ing] sure the application [i]s filled out properly and all necessary documents [are] attached." (DeVillasanta Dep. 17:24-18:3.) Once the application is complete, it is presented to the Township Committee at one of its bi-monthly meetings. Local Ordinance 18-6.

---

[3] Defendants Fairfield and DeVillasanta submitted a copy of Fairfield's Local Ordinances as an exhibit to their motion. (Dkt. No. 36, Ex. 5.)

3

On or about February 5, 2008, Robert Hoffman applied for B&M's 2008 junkyard license and his application was granted the following month.  (Id. ¶ 33.)  Pursuant to Ordinance 18-9, Plaintiffs paid the annual licensing fee of $200.00.  (Pls.' Response to Def. Griffin's Statement of Facts ("PRGSF") ¶ 124.)

Mr. Hoffman also submitted a used car dealer license application to enable B&M to operate as a used car dealer.  (GSF ¶ 34.)  The application, issued by the New Jersey Motor Vehicle Commission, required the applicant to first receive permission from the town in which the dealer wished to operate and then receive permission from the Commission.  (Id. ¶ 35.)  Fairfield, however, never approved the Hoffmans' dealer application, and the Hoffmans consequently never received permission to operate as a used car dealer.  (Id.)

On January 6, 2009, Robert Hoffman delivered to Griffin at the Township's office an application to renew B&M's junkyard license for 2009.  (GSF ¶ 77.)  This was the first interaction between Robert Hoffman and Griffin.  (Id. ¶ 81.)  Although the fee was again $200, Hoffman's renewal application contained a check for only $150.00.  (Id. ¶ 79.)  He did not apply for a used car dealer license.

On January 9, 2009, the Hoffmans entered into a contract to sell B&M and 311 Ramah Road to Rulyn's Garage LLC.  (GSF ¶ 62.)  The sale price was $950,000.00.  (Id. ¶ 64.)  The parties were

4

to close March 27, 2009.  (Pls.' Opp. Br. [Dkt. No. 41], Ex. H.) A condition of sale was a 2009 junkyard license for B&M.  (Id.) Rudy Dana, Jr., the owner of Rulyn's, gave the Hoffmans a $10,000 down payment.  (PRGSF ¶ 248.)

On February 20, 2009, Robert Hoffman returned to the Township's office to check on the application.  (Defs. Fairfield and DeVillasanta Statement of Facts ("FDSF") ¶ 25.)  No one in the office was present, and Hoffman left without speaking to anyone.  (Id.)

On March 9, 2009, Hoffman again returned to check on the status of his application.  (FDSF ¶ 25.)  Hoffman spoke with non-party Bob Hulitt, Fairfield's Zoning Officer, who told Hoffman he would "check into it."  (Id.)

Following his conversation with Hulitt, and with the March 27 closing approaching, Robert Hoffman told Dana that he "was having problems obtaining a license" for B&M.  (Hoffman Dep. 93:23-94:3.)  In response, Dana told him that he would delay the closing "30 days."[4]  (Pls.' Counterstatement of Facts to Town and DeVillasanta ("PCTD") ¶ 91.)

Mr. Hoffman returned to the Township's office on April 14, 2009.  (GSF ¶ 122.)  He met with Griffin and gave her a second

---

[4] Although unspecified by the parties, the new closing date, in light of the 30 day extension, was Sunday, April 26, 2009.

check for $50.00.[5]  (Id. ¶ 124.)  The interaction quickly grew acrimonious.  Hoffman states that Griffin told him that he had a "bogus company," was a "gangster," and that she was going to "run him out of town."  (Hoffman Dep. 59:7-13.)  Griffin denies making such statements and claims Hoffman had "an attitude" and told her his application should be automatically renewed.  (Griffin Dep. 209:20-24; 270:11-17.)

At some point, Griffin told Hoffman that B&M would have to be licensed through the state.  (GSF ¶ 130.)  Unbeknownst to Hoffman, Griffin had sent an internal memorandum to the Fairfield Township Committee indicating that B&M had applied for a town business license but the application was "transferred to State DMV w/$150.00 fee."  (March 4, 2009 Griffin Memorandum [Dkt. No. 37, Ex. 27.].)

During Hoffman and Griffin's April 14 argument, Hoffman found DeVillasanta and brought him into the conversation.  (GSF ¶ 129.)  Hoffman proceeded to inform Griffin and DeVillasanta that he was attempting to sell the Ramah Road property and the

---

[5] According to Plaintiffs, "Hoffman brought the check with him because he checked [h]is previous application, and on that application the fee was listed as $200.00 not the $150.00 he had initially paid."  (PRGSF ¶ 124.)  Griffin stated that she attempted to inform the Hoffmans of the insufficient payment via telephone, letter, and a visit to 311 Ramah Road, but was unable to reach them.  (GSF ¶ 145.)

sale depended on getting the business permit renewed. (Hoffman Tr. 58:17-23.)

Hulitt overheard the conversation and led Hoffman outside. (Hoffman Tr. 60:24.) Hoffman then informed Hulitt of the pending sale and asked why DeVillasanta "let [Griffin] talk the way she talks to the taxpayers." (Id. at 61:2-4.) Hulitt told Hoffman that Griffin "sued this Township, and everybody's walking on eggshells." (Id. at 61:5-6). Hulitt also told Hoffman that he would look into the pending application for him. (Id. at 60:13-14.)

Following the April 14 argument, and again unbeknownst to the Hoffmans, Griffin sent another memorandum to the Township Committee, DeVillasanta, Hulitt, and the Township Solicitor, outlining the Hoffmans' application. (April 24, 2009 [Dkt. No. 37-29].) The memorandum details how the deed to 311 Ramah Road changed hands three times within three years, a fire razed the business during the summer of 2008, and the business's licensing may have been granted in contravention of New Jersey law. (Id. at 1-2.) Griffin added that "Hoffman is very pushy with this mess and has attempted to assert that because it worked the last time it should continue." (Id. at 2.) She concludes with the following: "A great deal of time and attention was spent trying to confirm, whatever is going on with this application. Due diligence should be taken." (Id.)

7

Ten days later, on April 24, 2009, without any further correspondence from the Township, Mr. Hoffman cancelled his contract with Danna:

> We spoke regarding the previously proposed settlement date of March 27, 2009 and you were kind enough to permit me an additional 30 days to resolve the license issue. However, it is clear to me at this point that I will not be able to produce the auto salvage license from the Fairfield Township in a timely manner. Therefore, I am returning your deposit of $10,000 along with my apologies.

(Dkt. 41-3, Ex. J.)  No further contact took place between the Hoffmans and Danna, and the Hoffmans have since been unable to sell the property at an acceptable price.

In May of 2009, the Hoffmans retained an attorney, Sam Serta, to facilitate the issuance of their license.  In a letter dated June 24, 2009, Serta wrote the Township seeking renewal of the junkyard license and the "appropriate forms for a Notice of Tort Claim to be filed and served against the Township of Fairfield."  (June 24, 2009 Serta Letter [Dkt. No. 36-6].)

In a July 6, 2009 letter, Fairfield's solicitor asked Hulitt to investigate whether any business activity at 311 Ramah had been abandoned.  (Dkt. No. 37, Ex. 33.)  On August 10, 2009, Hulitt wrote that there had been no abandonment.  (Dkt. No. 37, Ex. 35.)

At the Fairfield Township Action Meeting on August 18, 2009, the Township Committee voted to renew Plaintiffs' license.

8

(PRGSK ¶ 118)  The Plaintiffs' license was officially renewed August 25, 2009.  (Id. ¶ 119)

    Plaintiff's filed the instant suit on April 13, 2011.

**II.**

    Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

    "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  Conoshenti v. Public Serv. Elec. & Gas, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting Celotex, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." Id. at 249.

### III.

Plaintiffs allege five causes of action against Defendants: negligence; violations of the Hoffmans' rights to procedural due process and substantive due process under the United States Constitution; violation of the New Jersey Constitution; and tortious interference with business relationships.[6]  For the reasons outlined below, all claims are dismissed.

### A.

Plaintiffs' negligence claim is twofold: (1) "Defendants were negligent in failing to renew a qualified applicant's business license in a reasonably timely fashion," (Am. Compl. ¶ 25); and (2) Fairfield and DeVillasanta negligently retained Griffin after becoming aware of her propensity "to retaliate against people she had personality conflicts with" (Pls.' Br. [Dkt. 41] at 6).  The Court addresses, and dismisses, each theory in turn.

---

[6] Plaintiffs also alleged violations of the Hoffmans' rights to equal protection under the Fourteenth Amendment and conspiracy under Section 1985. (Am. Comp. 35-36; 40-41.)  However, Plaintiffs wrote in an opposition brief that "at this time, the Plaintiffs are withdrawing the[ese] claims[.]"  (Pls.' Br. [Dkt. No. 41] at 23, n.4.)

1.

N.J. Stat. Ann. 59:2-5 grants immunity to public entities for injuries that arise from the licensing process:

> A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license certificate, approval, order, or similar authorization where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.

N.J. Stat. Ann. § 59:2-5.  This immunity extends to public employees:

> A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license certificate, approval, order, or similar authorization where he is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.

Id. § 59:3-6.

The New Jersey Supreme Court has made clear that these two provisions make public entities and their employees immune from negligence suits that stem from the failure to issue a license. Malloy v. State, 76 N.J. 515, 521 (1978).  This is the precise situation in this case.  Accordingly, summary judgment will be granted in favor of Defendants with respect to Plaintiffs' negligence claim as it pertains to Plaintiffs' first theory of liability.

2.

In an attempt to circumvent this immunity, Plaintiffs claim that the Township and DeVillasanta are liable for negligently retaining Griffin, and that their claim arises not from the delay in the licensing process, but rather the intentional misconduct of Griffin.  (Pls.' Br. [Dkt. No. 41] at 7.) Plaintiffs contend further that the immunity statutes were not designed to shield public entities and employees from situations where willful actions caused the underlying injury.  (Id. at 8.)

To succeed on a negligent retention claim, the plaintiff must meet two requirements.  First, the employer must have known or had reason to know of "the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons."  DiCosala v. Kay, 91 N.J. 159, 172 (1982). Second, the employer's retention of the employee must be the proximate cause of plaintiff's injury.  Id.

Plaintiffs allege that Griffin's "dangerous attribute" was "her propensity to retaliate against people she had personality conflicts with[.]"  (Pls.' Br. [Dkt. 41] at 6.)  Plaintiffs, however, fail to proffer any evidence that Griffin's employer was aware of such an attribute.  The only evidence Plaintiffs put forward is the deposition testimony of Hulitt (Pls.' Br. [Dkt. No. 41] at 5), where he states that Griffin's

12

"performance" was discussed by "committee people" prior to 2009.[7] (Hulitt Dep. Tr. 48:5-23.) But the deposition transcript indicates that Hulitt was only referring to conversations about Griffin's "times in" and "her times out." (Id. at 48:18-19; 48 5-10.) Hulitt affirmatively stated that he was unaware of any incident prior to the Hoffmans' application where Griffin "intentionally" withheld an applicant's license or ever did "something improper related to individuals she didn't like." (Id. 44:19-23.)

Accordingly, because there is no genuine dispute as to whether the Town or its officers were aware of Griffin's alleged "dangerous attribute," Plaintiffs' negligent retention claim must fail.

**B.**

Plaintiffs allege that the delay in the issuance of their junkyard license constituted a deprivation of the Hoffmans' procedural due process rights. To state such a claim under § 1983, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth

---

[7] Plaintiffs do not allege, and the evidence does not show, that Hulitt served in a supervisory role to Griffin. (PRGSF ¶ 85 (indicating that Plaintiffs do not contest that "Hulitt's responsibility was only to ensure that an applicant was complying with the Fairfield zoning laws for the business permit"); Hulitt Dep. 40:2-11 (stating that reviewing Griffin's work was "not part of my job").)

Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006).

    The Court finds that the procedures available to the Hoffmans constituted due process of law.[8] The "requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Kahn v. United States, 753 F.2d 1208, 1218 (3d Cir. 1985). Plaintiffs received just that. While employees of the Township investigated Plaintiffs' application, Plaintiffs' attorney sent a letter to DeVillasanta which was forwarded to the Township solicitor. Thereafter, Hulitt was asked to investigate some of the concerns raised in Griffin's memorandum (id., Ex. 33), and following Hulitt's letter indicating that the property had not been abandoned (id., Ex. 35), the Committee voted to renew the Hoffman's license

---

[8] Plaintiffs' assertion that they had a "due process right in a motor vehicle junk yard license" (Pls.' Br. [Dkt. No. 41] at 11) misses the mark. This is not an instance in which government action infringed a previously issued property right. Cf. Sea Girt Rest. & Tavern Owners Ass'n. v. Sea Girt, 625 F.Supp. 1482 (D.N.J. 1986) (holding that town ordinance limiting the hours in which alcoholic beverages could be sold infringed upon restaurateur's extant alcohol permit). Rather, if any right of the Plaintiffs was abridged, it was their right in "a benefit sought but not yet obtained." Midnight Sessions Ltd. v. City of Philadelphia, 945 F.2d 667, 679 (3d Cir. 1991). In such instances, procedural due process attaches "if state law limits the exercise of discretion by the state official responsible for conferring the benefit." Id.

(id., Ex. 36). Their license was issued days later. (Id., Ex. 37). The only possible deficiency in such process was the timeliness of the Township's response, and the Third Circuit has held that "delay alone does not create a procedural due process violation." Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 682 (3d Cir. 1991) (reversing the district court's entry of judgment notwithstanding a verdict and remanding for entry of judgment for the City on plaintiff's deficient procedural due process claim), overruled on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392 (3d Cir. 2003).

Plaintiffs argue that N.J.S.A. § 39:11-5 controls the issuance of a new license and the Township's failure to abide by the statute constitutes, "as a matter of law," a violation of due process. (Pls.' Br. [Dkt. No. 41] at 12.) Plaintiffs' argument is unpersuasive.

N.J.S.A. § 39:11-5 holds:

> Upon receipt of an application for the local permit or certificate of approval, the governing body or zoning commission of the municipality in which the junk business or junk yard is proposed to be established or maintained, shall hold a public hearing upon the application, which hearing shall take place not less than two weeks nor more than four weeks from the date of the application. Notice of the hearing shall be given the applicant and be published once in a newspaper having a circulation in the municipality not less than seven days before the date thereof.

15

Assuming, arguendo, that the statute controls the renewal of a junkyard license in addition to a town's initial approval,[9] Plaintiffs' argument still fails because state law does not dictate the procedural guarantees of the United States Constitution. Rather, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). The Court finds the Hoffmans received those protections their particular situation demanded.

Lastly, Plaintiffs reliance on N.J.S.A. § 39:11-5 fails for the additional reason that Defendants' failure to follow the statute's dictates could not have caused Plaintiffs' injury, i.e., the cancellation of their sale contract. Plaintiffs admit that Mr. Hoffman cancelled the contract on April 24, only ten days after he paid the full application fee. Even if Fairfield had processed B&M's 2009 license within the four weeks allowed under N.J.S.A. § 39:11-5, the renewal would still have issued after the contract was nullified. Accordingly, Plaintiffs' claim that the Hoffmans' procedural due process rights were violated must be dismissed.

---

[9] The only two judicial opinions that cite N.J.S.A. § 39:11-5 are both more than fifty years old and involve the issuance, or lack thereof, of original licenses for operating a junkyard. Howell Tp. v. Sagorodny, 134 A.2d 452, 455 (N.J. Super 1957; Pfister v. Municipal Council of City of Clifton, 43 A.2d 275, 267 (N.J. Sup 1945)

C.

The Hoffmans allege that their substantive due process rights were also violated by the Township's conduct during the application process. Plaintiffs' claim must be dismissed because Plaintiffs fail to allege that Fairfield interfered with "a particular quality of property interest" "worthy of protection under the substantive due process clause." Nicholas v. Pennsylvania State University, 227 F.3d 133, 140 (3d 2000).

While there is support for the contention that the Hoffmans' right in the renewal of their license receives the protections of procedural due process, see Midnight Sessions, Ltd, 945 F.2d at 679, Plaintiffs have not put forward anything to indicate that their application meets the higher standard substantive due process demands. See DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 598 (3d Cir. 1995) ("[N]ot all property interests worthy of procedural due process protection are protected by the concept of substantive due process.") The Third Circuit has clearly and repeatedly held that for a plaintiff to prevail on a non-legislative substantive due process claim, as Plaintiffs put forward here, the interest alleged to have been interfered with must be a "fundamental property interest under the Constitution." Chainey v. Street, 253 F.3d 200, 219 (3d Cir. 2008). Further, "[s]ubstantive due process refers to and protects federal rights," Ranson v.

17

Marrazzo, 848 F.2d 398, 411 (3d Cir. 1988), and Courts should exercise the "utmost care whenever [] asked to break new ground in this field." Collins v. City of Harker Heights, 503 U.S. 115, 124 (1992).

The Court holds that Plaintiffs' right to have their local business permit timely renewed is not a right protected by substantive due process. Accordingly, Plaintiffs' substantive due process claim is dismissed.

### D.

Plaintiffs allege in Count VI of their Amended Complaint that "[t]he actions of Defendants violate Plaintiffs' rights pursuant to N.J.S.A. 10:6-1 et seq." Plaintiffs do not specify any rights that were allegedly violated, and provide no further explanation. Furthermore, Plaintiffs in no way respond to Defendants' arguments in Defendants' opposition briefs that this claim should be dismissed. "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." Liberies v. County of Cook, 709 F.2d 1122, 1126 (7th Cir. 1983); see also Brown v. Johnson, 116 Fed.Appx. 342, 345 (3d Cir. 2004) ("Defendants respond that, though [plaintiff] raised equal protection and retaliation in his complaint and the District Court failed to address these matters, his failure to raise them at the summary judgment stage

18

was a waiver.  We agree.").  Accordingly, Count VI of Plaintiffs' Amended Complaint is dismissed.

## E.

Plaintiffs' final cause of action is tortious interference with a business relationship.  (Am. Compl. ¶¶44-47.)  Plaintiffs allege that "Defendants intentionally without justification or excuse prevented the Plaintiffs [] from renewing the business license."  (Id. ¶ 46.)

The New Jersey Supreme Court articulated the necessary elements for this cause of action in Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751-52 (1989): (1) a contractual relationship, (2) interference with that relationship by the defendants that was intentional and without justification or excuse, and (3) without the interference by the defendants the plaintiffs would have realized the benefits of the contractual relationship.

Plaintiffs' claim fails because the record shows no material dispute as to whether Defendants' conduct caused a loss of future gain.  Although Plaintiffs often gloss over this undisputed fact, Mr. Hoffman voluntarily cancelled his contract with Rulyn's Garage LLC.  As such, a claim for tortious interference cannot lie.  Woodend v. Lenape Regional High School Dist., -- Fed.Appx. --, 2013 WL 4082030 (3d Cir. Aug. 14, 2013) ("The District Court correctly concluded that [defendant's]

19

conduct could not have caused a loss of future gain because the loss was caused by [plaintiff's] voluntary [conduct].") Accordingly, Plaintiffs' tortious interference claim must be dismissed.

## IV.

For the reasons stated above, Defendants' motions for summary judgment are granted.  An appropriate order accompanies this opinion.

Date: September 27, 2013

                                    /s/ Joseph E. Irenas_____

                               **Hon. Joseph E. Irenas**
                               **Senior United States District Judge**